**UNITED STATES COURT DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICHARD BERGER, for himself and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>against<br><br>NEW YORK UNIVERSITY,<br><br>Defendants. | Civ. No.: 1:19-cv-267<br><br>ECF Case<br><br>**NOTICE OF REMOVAL**<br><br>[Removed from Supreme Court of the State of New York, County of New York, Index No. 161553/2018] |

**PLEASE TAKE NOTICE** that Defendant[1] NEW YORK UNIVERSITY ("NYU" or "Defendant"), by and through its undersigned counsel, pursuant to 28 U.S.C. §§ 185(a), 1331, 1441, and 1446, hereby gives notice of the removal of this action from the Supreme Court of the State of New York, County of New York (Index No. 161553/2018), where it originally was filed and currently is pending, to the United States District Court for the Southern District of New York.

Defendant states the following in support of removal:

**PROCEDURAL BACKGROUND**

1.  On or about December 11, 2018, plaintiff Richard Berger ("Plaintiff"), a former employee of NYU, initiated this putative class action against NYU by filing a Summons and Complaint in the Supreme Court of the State of New York, County of New York. A copy of Plaintiff's Summons and Complaint ("Complaint" or "Compl.") is attached hereto as **Exhibit A**.

2.  Plaintiff brings this action on behalf of himself and further seeks to represent a putative "class consisting of each and every other person who performed work as security guards

---

[1] Plaintiff only identifies a single defendant, New York University, in this matter, and therefore the caption's reference to multiple "Defendants" is incorrect.

and in other related trades for Defendants [*sic*] at any time between December 2012 and the present" (the "Putative Class").  (Compl. ¶ 7.)

3. In the Complaint, Plaintiff alleges on behalf of himself and the Putative Class, that NYU failed to pay to Putative Class members: (i) "all earned overtime compensation for hours worked after the first forty (40) hours in a week," purportedly in violation of New York Labor Law ("NYLL") § 663 and 12 NYCRR § 142-2.2; and (ii) "their hourly wage for all hours worked in accordance with the agreed upon terms of their employment," specifically "time spent changing in the locker room, time spent assembling before each shift, time spent waiting for relief workers to appear at the end of each shift, and time spent travelling [*sic*] between the designated locker room building and the assigned security post." (*See* Compl. ¶¶ 20-33.)

4. The "agreed upon terms of their employment", alleged in Paragraph 31 of the Complaint, specifically refers to that certain collective bargaining agreement entered into between NYU and Local One Security Officers Union (the "Union"), dated May 20, 2013 (the "CBA"). Plaintiff, and all members of the Putative Class, at all relevant times are (or were) members of the Union and therefore are subject to all terms and conditions set forth in the CBA, including without limitation those terms and conditions that are applicable to and specifically govern the claims alleged in the Complaint.  A true and correct copy of the CBA is attached hereto as **Exhibit B** ("Exh. B.").

5. In addition, the CBA contains mandatory grievance and arbitration provisions which are directly applicable to the claims alleged in the Complaint – provisions which Plaintiff failed to comply with. (*See* Exh. B, Article 6, at p. 11.)

**GROUNDS FOR REMOVAL**

**I.      Removal Is Appropriate Pursuant to Section 301
of the Labor Management Relations Act.**

6.      This Court has original jurisdiction over this action pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), codified in relevant part at 28 U.S.C. § 185(a). Under Section 301 of the LMRA, a federal district court has ***exclusive jurisdiction*** over "[s]uits for violation of contracts between an employer and a labor organization." *Id*. In interpreting the LMRA's preemptive effect, the United States Supreme Court has held "that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (internal citations omitted). Further, the Second Circuit has made clear that "[t]he 'unusual pre-emptive power' accorded section 301 extends to create federal jurisdiction even when the plaintiff's complaint makes no reference to federal law and appears to plead an adequate state claim." *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (quoting *Livadas v. Bradshaw,* 512 U.S. 107, 122 n.16 (1994)).

7.      To effectuate removal, NYU need only submit a "short and plain statement of the grounds for removal," 28 U.S.C. § 1446(a), which is satisfied by setting forth a plausible allegation of the relevant jurisdictional facts. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). A defendant need not propound evidence establishing jurisdictional facts with its notice of removal. *Id*.

8.      Here, Plaintiff and all members of the Putative Class are current or former members of the Union. As members of the Union, Plaintiff and all members of the Putative Class were and continue to be subject to the CBA, which outlines the terms of their employment, including but

3

not limited to: the schedule of working hours (Exh. B, Article 5); assemblage prior to the start of shift (*id*.); traveling to and from worksites (*id*.); whether donning and doffing time is compensable (*id*.); the mandatory grievance and arbitration provisions (*id*., Article 6); wages (*id*., Article 14; Appendices A, B); management rights (*id*., Article 15); and union representation (*id*., Article 39).

9. The claims alleged by Plaintiff and the Putative Class clearly implicate, and require the interpretation of, Article 5 of the CBA. Article 5, titled "Hours of Work," expressly details that "[t]he regular work week shall consist of forty (40) hours divided into five (5) days of eight hours each. . . . The first fifteen (15) minutes of each shift will be used for the purpose of roll call," and "[e]mployees will not be required to perform any duties during the last fifteen (15) minutes of their shift, but will be permitted to return to the locker room to change their clothes and return equipment" ("Doffing Time"). (Exh. B, at p. 6.) Finally, it explicitly states that during Doffing Time, "Employees will be permitted to leave the premises**, *but will be credited with the full fifteen (15) minutes*.**" (*Id*. at pp. 5-6 [emphasis added].)

10. Plaintiff alleges that NYU failed to pay him and members of the Putative Class for: (i) "time spent changing in the locker room, time spent assembling before each shift, time spent waiting for relief workers to appear at the end of each shift, and time spent travelling [*sic*] between the designated locker room building and the assigned security post;" and (ii) overtime in connection with respect to same. Given Article 5's provisions concerning, *inter alia*, what constitutes working time and the duration of shifts, adjudication of Plaintiff's claims necessarily requires interpretation of the CBA and its terms and conditions. *See Vera,* 335 F.3d at 115 (finding that the resolution of plaintiff's wage claim brought under the NYLL required interpretation of the controlling collective bargaining agreement); *see also Salamea v. Macy's E., Inc.,* 426 F. Supp. 2d 149, 154-55 (S.D.N.Y. 2006) (finding that the controlling collective bargaining agreement must

be interpreted to resolve plaintiff's NYLL claims when "the CBA contains detailed requirements" regarding the claims at issue).

11. Indeed, Plaintiff himself recognizes the necessity of interpreting the CBA by alleging that NYU failed to pay him (i.e., "breached") and members of the Putative Class "their hourly wage for all hours worked *in accordance with the agreed upon terms of their employment*," which is a clear reference to the CBA.  (Compl. ¶ 31 [emphasis added].)  *See Salamea*, 426 F. Supp. 2d at 154 (finding interpretation of a collective bargaining agreement necessary where plaintiff's claim derived from its alleged breach); *see also Tand v. Solomon Schechter Day Sch. of Nassau Cty.*, 324 F. Supp. 2d 379, 383 (E.D.N.Y. 2004) (recognizing that "[t]he Court must interpret certain articles in the CBA" when plaintiff explicitly alleges defendant's actions "[were] untimely under the terms of the [CBA] and therefore a breach of the [CBA].").

12. Moreover, Defendants and the Union historically have resolved disputes and grievances concerning wage and hour claims, including overtime and other similar claims arising under Article 5 of the CBA, through the grievance and arbitration processes set forth in Article 6 of the CBA.  Indeed, there is a lengthy historical course of dealing, and agreements and understandings made, between NYU and the Union providing for the resolution of wage and hour matters based on Article 5 (and other provisions) of the CBA through the grievance and arbitration procedures set forth in Article 6, which necessarily will need to be consulted and interpreted in order to adjudicate Plaintiff's claims.

13. Because Plaintiff's wage payment claims necessarily depend on interpreting the terms and provisions of the CBA, as well as the parties' historical course of dealing regarding matters relating to compensable and non-compensable time, such claims are completely preempted

by Section 301 of the LMRA and can properly be removed to federal court. *See, e.g.*, *Vera*, 335 F.3d 109 (affirming removal on the basis of section 301 of the LMRA when resolution of NYLL claims would require analysis of the controlling collective bargaining agreement); *Salamea*, 426 F. Supp. 2d at 154 (granting removal of state law action based on Section 301 of the LMRA because "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law") (quoting *Allis-Chalmers Corp,* 471 U.S. 202).

14. Separately, pursuant to Section 301(a) of the LMRA, this Court further has original jurisdiction in light of Defendant's anticipated motions – which Defendant intends to bring in the event this matter is not dismissed outright or plaintiff seeks to amend his Complaint to allege claims for breach of the CBA – to: (i) dismiss for failure to follow the CBA's mandatory grievance and arbitration procedures; and/or (ii) compel arbitration of Plaintiff's claims (and the claims of the Putative Class) pursuant to Article 6 of the CBA.

15. Article 6 of the CBA sets forth mandatory grievance and arbitration procedures for all disputes arising under the CBA, including those relating to compensation. As referenced above, the CBA and the parties' historical course of dealing supports that similar claims are subject to these mandatory procedures, as the parties to the CBA have regularly and routinely submitted and resolved disputes concerning employee compensation, including arising under Article 5 of the CBA, through these procedures. Even assuming Plaintiff's claims, and the claims of the Putative Class, were not preempted by Section 301 (and they are), all of the claims set forth in the Complaint clearly are subject to the mandatory grievance and arbitration provisions of the CBA.

16. Plaintiff did not follow these procedures, and Defendant anticipates moving to dismiss on this basis. Determination of whether dismissal is proper in this context will require

interpretation and analysis of Article 6 of the CBA, which is the exclusive province of the federal courts.

17.     Moreover, should the Court not dismiss Plaintiff's claims for failure to follow the grievance and arbitration procedures, Defendant will move to compel arbitration. This, again, will require interpretation and analysis of Article 6's arbitration provision and its applicability, an analysis over which the LMRA provides that federal courts have exclusive jurisdiction.[2]

18.     The bases for removal pursuant to Section 301 of the LMRA have been demonstrated, *supra*. If any questions arise as to the propriety of the removal of this action on any of these bases, NYU requests the opportunity to present a brief, oral argument, and further evidence as necessary in support of its position that this case is removable to this Court.

## II.     All Procedural Requirements for Removal Have Been Satisfied.

19.     NYU was served with the Summons and Complaint on December 17, 2018. Therefore, this Notice of Removal has been timely filed pursuant to 28 U.S.C. § 1446(b) because NYU filed it within thirty (30) days of receipt of the initial pleadings through service or otherwise.

20.     Because NYU is the sole defendant in this action, no other defendant is required to consent to this removal.

21.     Pursuant to 28 U.S.C. § 1441(a), assignment to the United States District Court for the Southern District of New York is proper because Plaintiff filed this action in the Supreme Court of the State of New York, County of New York.

22.     In accordance with 28 U.S.C. § 1446(a), a copy of "all process, pleadings, and orders" served on or received by NYU in this action are attached as part of **Exhibit A**.

---

[2] In addition, assuming the claims at issue were not subject to complete preemption, Plaintiff's claims, and the claims of the members of Putative Class, are subject to, and required to be arbitrated in accordance with, the Federal Arbitration Act 9 U.S.C. §§1 et seq. (the "FAA").

23. Upon the filing of this Notice of Removal in the United States District Court for the Southern District of New York, written notice of removal will be given to Plaintiff. NYU will promptly serve on Plaintiff and file with the Supreme Court of the State of New York, County of New York, a Notice of Filing of Notice of Removal to Federal Court, as required by 28 U.S.C. § 1446(d). A copy of the Notice to the Supreme Court, without exhibits, is attached hereto as **Exhibit C**.

### RESERVATION OF RIGHTS

24. This Notice of Removal is filed subject to and with full reservation of all rights and defenses under federal or state law, including but not limited to defenses and objections to forum, venue, improper service and personal jurisdiction. No admissions are intended hereby as to the propriety of liability or damages with respect to any aspect of this case. Nothing in this Notice of Removal should be taken as an admission that Plaintiff's allegations are sufficient to state a claim for relief or have any merit, or that Plaintiff is entitled to or otherwise may recover any of the amounts described above.

**WHEREFORE**, Defendant New York University respectfully requests that the above action, now pending before the Supreme Court of the State of New York, County of New York, be removed to the United States District Court for the Southern District of New York, and that no further proceedings be had in this case in the Supreme Court of the State of New York, County of New York.

Dated:   January 9, 2019   **DLA PIPER LLP (US)**
        New York, New York

By: /s/ Joseph A. Piesco
    Joseph A. Piesco, Jr.
    Garrett D. Kennedy
    DLA PIPER LLP (US)
    1251 Avenue of the Americas 27th Floor
    New York, New York 10020-1104
    Telephone:   (212) 335-4500
    Facsimile:    (212) 335-4501

*Attorneys for Defendant*
*New York University*