UNITED STATES COURT DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICHARD BERGER, for himself and on
behalf of all others similarly situated,

               Plaintiffs,

     against

NEW YORK UNIVERSITY,

              Defendant.

Civ. No. 19-CV-00267 (JPO)

---

## DEFENDANT'S MEMORANDUM OF LAW IN
## <u>OPPOSITION TO MOTION TO REMAND</u>

**DLA PIPER LLP (US)**
Joseph A. Piesco, Jr., Esq.
Garrett D. Kennedy, Esq.
1251 Avenue of the Americas
New York, New York 10020
Tel.:   (212) 335-4537
Fax:   (212) 335-4500
joseph.piesco@dlapiper.com

*Attorneys for Defendant*
*New York University*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................II

PRELIMINARY STATEMENT .......................................................................1

STATEMENT OF RELEVANT FACTS ..........................................................4

I.     Background ............................................................................................4

II.    Plaintiff's Claims Arise from the CBA .................................................5

III.   The CBA's Pay Structure......................................................................8

IV.    CBA's Mandatory Grievance and Arbitration
       Process Historically Has Applied to Wage Disputes ...........................9

PROCEDURAL POSTURE ...............................................................................9

ARGUMENT ....................................................................................................10

I.     This Court Has Jurisdiction Under the LMRA;
       Plaintiff's Motion To Remand Properly Should Be Denied ...............10

   A.     Section 301 Preemption, Generally.............................................10

   B.     Plaintiff's Claims Arise from the CBA
          and Thus Federal Jurisdiction Is Proper .....................................12

      i.     Plaintiffs' Donning and Doffing
             Claims Are Preempted by the LMRA..................................13

      ii.    Plaintiff's Claim for End-of-Shift
             Pay Arises Solely from the CBA .........................................16

      iii.   Prosecution of Plaintiff's Overtime
             Claims Involves Interpretation of the CBA.........................17

      iv.    To the Extent the Court Finds Any
             Ambiguity, Preemption Is Appropriate...............................20

      v.     Plaintiff's Authority Is Readily Distinguishable ...............21

   C.     Plaintiff Cannot Avoid Federal
          Jurisdiction Through Artful Pleading.........................................22

   D.     Interpretation of the CBA's Provisions Requires
          Consideration of the Union and NYU's Course of Dealing ......23

CONCLUSION .................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albrecht v. Wackenhut Corp.*,
    2009 WL 3078880 (W.D.N.Y. Sept. 24, 2009),
    *aff'd*, 379 F. App'x 65 (2d Cir. 2010) .................................................................................13

*Allis-Chalmers Corp. v. Lueck*,
    471 U.S. 202 (1985) ................................................................................................. 11, 17

*Anderson v. JCG Indus., Inc.*,
    2009 WL 3713130 (N.D. Ill. Nov. 4, 2009) .......................................................................20

*Carter v. Tyson Foods, Inc.*,
    2009 WL 4790761 (N.D. Ind. Dec. 3, 2009) ............................................................... 15, 16

*Carver v. Bank of New York Mellon*,
    2017 WL 1208598 (S.D.N.Y. Mar. 31, 2017) (J. Oetken) .....................................................1

*Caterpillar v. Williams*,
    482 U.S. 386 (1987) ................................................................................................. 11, 23

*Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc*,
    194 F. Supp. 3d 221, 229 (S.D.N.Y. 2016) .......................................................................22

*Coakley v. Kingsbrook Jewish Med. Ctr.*,
    2017 WL 398379 (E.D.N.Y. Jan. 30, 2017) .......................................................................21

*Conn. v. YP Advert. & Publ'g LLC*,
    2017 WL 810279 (D. Conn. Mar. 1, 2017) ............................................................ 11, 22, 23

*Cooper Union Fed'n of Coll. Teachers, Local 2163, NYSUT, AFT, AFL-CIO v.*
    *Cooper Union for Advancement of Sci. & Art*,
    2019 WL 121000 (S.D.N.Y. Jan. 7, 2019) .........................................................................21

*Cortec Indus., Inc. v. Sum Holding, L.P.*,
    949 F.2d 42 (2d Cir. 1991) ..............................................................................................23

*Curry v. Kraft Foods Global, Inc.*,
    2012 WL 104627 (N.D. Ill. Jan.12, 2012).............................................................. 13, 14, 15

*Drake v. Hyundai Rotem USA, Corp.*,
    2013 WL 4551228 (E.D. Pa. Aug. 28, 2013) .......................................................... 16, 17, 20

*Eka v. Brookdale Hosp. Med. Ctr.*,
    2016 WL 11263669 (E.D.N.Y. Sept. 2, 2016) .............................................................*passim*

*Ellis v. Harpercollins Pubs., Inc.*,
   2000 WL 802900 (S.D.N.Y. June 21, 2000) .......................................................16

*Gorman v. Consol. Edison Corp.*,
   488 F.3d 586 (2d Cir. 2007) ...................................................................... 13, 14

*Heyer v. Morris Okun, Inc.*,
   2003 WL 21991583 (S.D.N.Y. Aug. 20, 2003)........................................... 11, 22

*Hoops v. KeySpan Energy*,
   794 F. Supp. 2d 371 (E.D.N.Y. 2011).............................................................19

*Jordan v. MV Transportation, Inc.*,
   2016 WL 748115  (E.D.N.Y. Feb. 3, 2016) .....................................................22

*Kaye v. Orange Reg'l Med. Ctr.*,
   975 F. Supp. 2d 412, 425 (S.D.N.Y. 2013) .....................................................21

*Levy v. Verizon Info. Servs., Inc.*,
   498 F. Supp. 2d 586 (E.D.N.Y. 2007).............................................................12

*Livadas v. Bradshaw*,
   512 U.S. 107 (1994) ......................................................................................22

*Martinez v. Cargill Meat Sols. Corp.*,
   2011 WL 13078421 (D. Neb. Apr. 12, 2011)............................................. 16, 19

*Patton v. Stolle Mach. Co., LLC*,
   2015 WL 5013668 (D. Colo. Aug. 25, 2015) ..................................................13

*Penn. Fed'n of the Bhd. of Maint. of Way Aployees v. Nat'l R.R. Passenger Corp.*,
   989 F.2d 112 (3d Cir.1993) ...........................................................................16

*Puccino v. SNET Info. Servs., Inc.*,
   2011 WL 4575937 (D. Conn. Sept. 30, 2011) ................................................23

*Salamea v. Macy's E., Inc.*,
   426 F. Supp. 2d 149 (S.D.N.Y. 2006) ....................................................... 12, 23

*Stolarik v. New York Times Co.*,
   323 F. Supp. 3d 523 (S.D.N.Y. 2018) .............................................................17

*Sullivan v. Am. Airlines*,
   424 F.3d 267 (2d Cir. 2005) ..................................................................... 22, 23

*Townsend v. BC Nat. Chicken LLC*,
   2007 WL 442386 (E.D. Pa. Feb. 2, 2007) .................................................. 15, 20

*Vera v. Saks & Co.*,
    335 F.3d 109 (2d Cir. 2003) ................................................................................ 11, 21, 22

*Wynn v. AC Rochester*,
    273 F.3d 153 (2d Cir. 2001) ....................................................................................... 11

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*,
    215 F.3d 247 (2d Cir. 2000) ......................................................................................... 1

**Statutes**

29 U.S.C. § 185 ..........................................................................................................*passim*

Defendant New York University ("NYU" or "Defendant") submits this memorandum of law in opposition to plaintiff Richard Berger's ("Berger" or "Plaintiff") Motion to Remand the instant action to the Supreme Court of the State of New York (the "Motion" or "Mot.").[1]

## PRELIMINARY STATEMENT

Plaintiff, a security officer for NYU, is a member of Local One Securities Officers Union (the "Union"), whose members consist of officers employed by NYU pursuant to a Collective Bargaining Agreement (the "CBA").[2]  Berger contends he and a putative class of Union members (the "Putative Class") were not paid in accordance with the New York Labor Law ("NYLL") for certain time worked at the start and end of their shifts.  He filed the instant action in New York State Court, and Defendant removed the matter pursuant to Section 301, 29 U.S.C. § 185 ("Section 301") of the Labor Management Relations Act ("LMRA").[3]  Plaintiff now seeks to remand.

Federal Jurisdiction is proper and Plaintiff's Motion should be denied.  Section 301 provides that federal courts have exclusive jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce" – such as the CBA.  Courts interpreting Section 301 have consistently held that state law wage and hour claims, like those here, are preempted by Section 301, and subject to federal jurisdiction, where interpretation or application of the CBA is required.

---

[1] True and correct copies of the Declaration of Sandi Dubin, Esq., dated March 7, 2019 ("Dubin. Decl."), with supporting exhibits ("Ex."), and the Declaration of Shanelle Pendergrass, dated March 6, 2019 ("Pendergrass Decl.") are submitted herewith.  Where subject matter jurisdiction is challenged, "a court may refer to evidence outside the pleadings, such as affidavits."  *Carver v. Bank of New York Mellon*, 2017 WL 1208598, at *2 (S.D.N.Y. Mar. 31, 2017) (J. Oetken) (*citing Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).
[2] A true and correct copy of the CBA is attached to Defendant's Notice of Removal.  (ECF Nos. 1-2, 1-3.)
[3] In his Motion to Remand, Plaintiff claims Defendant removed the case "in the hypothetical event that Plaintiffs amend their complaint to add a breach of contract claim," which would be subject to the CBA's mandatory grievance and arbitration process.  (Mot. at pp.1-2.)  This is incorrect.  The basis for removal is that Plaintiff's *current* statutory claims are subject to, and preempted by, Section 301 of the LMRA.  Additionally, Plaintiff's *current* statutory claims are subject to the CBA's mandatory grievance and arbitration process, and thus must be arbitrated under the Federal Arbitration Act.

Here, Plaintiff's claims indisputably arise from, and are inextricably intertwined with, the CBA and, accordingly, are properly before this Court. While heavy on the law, Plaintiff's Motion is slim on the facts and circumstances surrounding his putative class claims. The fact of the matter is that Plaintiff's wage claims are based on decades of negotiations, bargaining history and course of dealings whereby the Union and NYU agreed to what is, and what is not, compensable working time. Plaintiff concedes as much in his Complaint, wherein he specifically alleges that he and the Putative Class were not paid "***in accordance with the agreed upon terms of their employment.***"[4] (Compl., ¶ 31 [emphasis added].) As the CBA and the related course of dealings are the only source for any such "agreed upon terms," his own pleadings make clear that his claims arise from the CBA.

Plaintiff argues this case involves a simple claim for wages that has nothing to do with the CBA. It is not, because the underlying claims spring from and are contingent on interpretation of the CBA. First, Plaintiff claims entitlement to pay for donning and doffing time. It is well-settled that where, as here, donning and doffing time involves merely putting on "clothes," such is not paid "working time" – as was agreed upon by the Union and NYU in connection with the CBA. And when a CBA speaks to the issue of compensation for donning and doffing time, courts consistently have found that Section 301 preempts state law claims. This is the case here: the CBA and decades of related custom and practice between the Union and NYU dictate precisely what constitutes compensable working time, including with respect to donning and doffing.

Second, Plaintiff's end-of-shift claims require interpretation of various provisions of the CBA and the historical agreements, custom and practice between the Union and NYU regarding same. The CBA expressly provides that during the 15-minute period at the end of officers' shifts,

---

[4] In his Motion, Plaintiff states "Plaintiffs' claims have ***nothing whatsoever*** to do with the collective bargaining agreement" and that "there is no allegation that a CBA was violated." (Mot. at p.2.) Clearly, this is not true.

they need not perform *any* services, but can change and go home, but will be paid for the entire 15-minute period regardless of when they leave.  The sole basis for any claim for pay during a period when Union members are not providing services is the CBA – not the NYLL, since there is no statutory requirement for an employer to pay employees for such time.  Simply put, Plaintiff's claim for end-of-shift pay is entirely contractual, necessarily requires the interpretation and application of the CBA, and is wholly independent of the NYLL.

Finally, the CBA details a complex pay structure that will need to be interpreted and applied in considering Plaintiff's claims.  This is not simple arithmetic, and the necessary calculations tie directly to the required interpretations of compensable time under the CBA.  Among other things, the CBA provides for various pay differentials based on duties an officer may hold in any given shift; nightly shift differentials covering parts of two different shifts; overtime premiums (which are purely contractual in nature) for time over eight hours in a day; and automatic daily overtime pay for certain assignments, regardless if such time is worked (again, a creature of contract).  In analyzing Plaintiff's claims – and whether *any* wages are due and owing under the NYLL – the Court will be forced to interpret this complex pay structure, and further determine if any offsets will be required in light of the differences and/or overlap between statutory wages and overtime versus contractual wage payments and overtime.  Courts facing similar considerations routinely have found state law claims to be preempted by Section 301.

Plaintiff offers nothing to the contrary.  It is quite telling that Berger's Motion papers avoid any citation to the CBA – as if it never existed – and fail to explain how or why the CBA is irrelevant to his claims.  Indeed, Plaintiff's remand motion does nothing more than cite (and recite) inapposite cases where courts have held interpretation of a bargaining agreement is unnecessary, tangential or generally inconsequential.  Many of the decisions cited by Plaintiff involve cases

where the only reason for the court to consult a bargaining agreement was to determine the appropriate pay rate.  *If* that were the case here, Defendant would agree Section 301 preemption would not apply.  But it is not, and Plaintiff does not cite a single case where a CBA contains specific provisions that directly govern, and memorialize historical agreements directly relating to, donning and doffing time, or where a bargaining agreement contains provisions which compensate employees for time even though no compensable services are being provided, as is the case here.

In short, Plaintiff's claims arise from, and require the interpretation and application of (and not just reference to), the CBA and the Union and NYU's lengthy history of agreements and course of dealings around these matters.  As such, Plaintiff's claims are preempted by Section 301 of the LMRA.  Accordingly, for the reasons set forth herein and in Defendant's Notice of Removal (ECF No. 1), NYU respectfully submits that Plaintiff's Motion should be denied.

## STATEMENT OF RELEVANT FACTS

### I.   Background

Berger currently is employed by NYU as a security guard.  (Compl., ¶ 14.)  NYU security guards are represented by, and members of, the Union, and are employed pursuant to the terms and conditions set forth in the CBA.[5]  (*See* Dubin Decl., Ex. A.)

On December 11, 2018, Berger instituted the present action against NYU by filing the Complaint in the Supreme Court of New York State, New York County.  (ECF No. 1-1.)  In his Complaint, Berger alleges that he and other similarly situated NYU security guards – all of whom are Union members – were not paid for certain time worked, in purported violation of the NYLL.

---

[5] The Union and NYU's most recent CBA was effective as of July 1, 2012, expired on June 30, 2018, and subsequently was extended until October 31, 2018.  (*See* Dubin Decl., Ex. A.)   The Union and NYU currently are negotiating a successor agreement.

(Compl., ¶¶ 16-19.)  Berger specifically contends that he and the Putative Class were not paid for: (i) time at the start of their shift, during which officers allegedly don their uniforms at an NYU locker room, assemble for roll call, and travel to that day's "assigned security post"; and (ii) time at the end of their shift in which they are "required to wait for relief guards," travel time back to the locker room, and doff their uniforms.  (*Id*.)

## II.   Plaintiff's Claims Arise from the CBA

Plaintiff's claims arise from and are governed by the CBA.  Article 5 of the CBA, entitled "Hours of Work," expressly addresses compensable working time, including but not limited to donning and doffing time, roll call and end of shift procedures.  It reads:

> The regular work week shall consist of forty (40) hours divided into five (5) days of eight hours each.  All shifts will be scheduled over 8 1/2 hours with a one half hour unpaid meal break.  The first fifteen (15) minutes of each shift will be used for the purpose of roll call. Employees will not be required to perform any duties during the last fifteen (15) minutes of their shift, but will be permitted to return to the locker room to change their clothes and return equipment.  At any time during said fifteen (15) minutes, Employees will be permitted to leave the premises, but will be credited with the full fifteen (15) minutes.

(Dubin Decl., Ex. A, Art. 5(A).)

Under the CBA, a Union member's compensable working day starts at with a "roll call" period, which is the fifteen-minute period immediately prior to the Union members' scheduled shift time.  (*See* Dubin Decl., Ex. A, Art. 5(A),(I); Pendergrass Decl., ¶¶ 5-11.)  Thus, if an officer's shift begins at 11:00 p.m., "roll call" begins at 10:45 p.m., and the officer is paid beginning as of 10:45 p.m. and continuing through the end of his or her shift (less a thirty minute meal break). (Pendergrass Decl., ¶ 5.)

Prior to roll call, officers typically come to their assigned locker room – NYU has locker rooms in different buildings – and change into their uniform.  (Pendergrass Decl., ¶¶ 7, 10-11.)

These uniforms consist of a shirt, pants and shoes (and occasionally a jacket), but do ***not*** include any safety equipment, nor are officers provided with any weapons or other safety or specialized equipment. (*Id.*, ¶ 10.) Pursuant to the CBA and decades-long custom and practice, this time spent donning uniforms is not paid working time, and neither the Union nor any Union member has challenged this practice, whether through the grievance procedure or otherwise. (*Id.*, ¶ 11.)

At the start of the "roll call" period (*i.e.*, the beginning of the paid 15-minute period prior to their shift), officers must leave the locker room to go to roll call, with a different roll call held for each locker room; as a result, going to "roll call" can be as simple as leaving the locker room and walking to another area of that same building for some employees, while others might need to travel to a different building. (Pendergrass Decl., ¶¶ 7-8.) By way of example, for the vast majority of the applicable NYLL limitations period, Plaintiff and a number of other Union members were required to walk from their locker room to roll call in a building across the street; as a result, the CBA expressly provides for a paid "two-minute grace period" for these Union members to get from their assigned locker room to the designated place for roll call.[6] (Dubin Decl., Ex. A, Art. 5(I); Pendergrass Decl., ¶¶ 8-9.)

Roll call typically takes around five minutes; once completed, officers leave for their assigned locations. (Pendergrass Decl., ¶¶ 7-9.) This process varies from officer to officer; some must travel to other buildings, some are assigned to the building in which roll call is held, and some go on "patrol" (*i.e.*, patrolling the streets), so they have no specifically assigned building to travel to. (*Id.*) For instance, during the vast majority of the applicable NYLL limitations period, Berger was posted almost exclusively at the same building in which his roll call was held, and thus

---

[6] Since September 2018, the roll call process has changed somewhat for persons assigned to the Washington Place locker room, as the roll call location has been moved to another building further away. (Pendergrass Decl., ¶ 8.) For affected officers, the Union and NYU have agreed to an extended roll "grace period" – up to eight minutes – and officers are still paid for the entire 15-minute period. (*Id.*)

was not required to travel anywhere.  (*Id.*)  The CBA provides that all time, starting at roll call, is compensable.  (Dubin Decl., Ex. A, Art. 5(A),(I).)

With respect to the end of officers' scheduled shifts, the CBA provides that officers "will not be required to perform any duties during the last fifteen (15) minutes of their shift, but will be permitted to return to the locker room to change their clothes and return equipment."  (Dubin Decl., Ex. A, Art. 5(A).)  This fifteen-minute period occurs immediately following a Union member's shift, *e.g.*, if a member's shift ends at 7:00 a.m., he will be paid – but need not perform any duties – for the time from 7:00 a.m. through 7:15 a.m.  (Pendergrass Decl., ¶ 12.)  If an officer must stay at his or her post and provide services during this period, they will be paid a daily "overtime premium" for such period – under the CBA, officers receive overtime if they work in excess of eight hours in a day – and do so by submitting an "overtime slip" to NYU reflecting as much.  (*Id.*, ¶¶ 13-14.)  These additional overtime premiums are not required under the NYLL (or any federal wage laws), but are the product of longstanding practices and course of dealings between NYU and the Union.  (*Id.*)

In practice, these end-of-shift procedures differ by officer based on the nature of their assignment.  For officers assigned to academic buildings (like Berger), they need only wait for their replacement, but can leave upon their arrival.  (Pendergrass Decl., ¶ 15.)  Officers on patrol (*i.e.*, not assigned to a specific building) can return to the locker room without waiting for a replacement, and often do so at the very end of their shift (*i.e.*, prior to or at the start of the 15-minute period).  (*Id.*)  However, officers assigned to dormitories generally need to wait for a replacement and then conduct certain administrative tasks before leaving their post; this often bleeds into the 15-minute period and, as a result, the CBA presumptively awards these residential officers daily overtime compensation – "overtime credit" – the amount of which is dependent on

the building to which they are assigned, and which is paid regardless if they work this additional time or not.  (Dubin Decl., Ex. A, Art. 14(H) ["Security officers will retain any overtime credit they received as of May 14, 1997 for working in a dormitory."]; Pendergrass Decl., ¶ 16.)

## III.   **The CBA's Pay Structure**

The CBA lays out a complex pay structure, detailing the manner in which Union members are to be compensated.  In the first instance, the CBA details numerous pay differentials which may be available to Union members in any given shift (there are three daily eight-hour shifts, *see* Pendergrass Decl., ¶ 5), which may be stacked upon one another.

First, the CBA provides for pay differentials based on duties, with supplemental payments for Union members who, in a given shift: (i) drive a motor vehicle, a three-wheeled scooter, or bicycle; (ii) hold a fire safety certificate and perform duties relating to same; and/or (iii) serve as a Field Training Officer.  (Dubin Decl., Ex. A, Art. 14(C), (G), (I)(1).)  In addition, the CBA provides for shift differential pay, with additional payments for working between 5:00 p.m. and 11:00 p.m.; notably, this shift differential cuts across two different daily shifts, as one shift runs from 3:00 p.m. to 11:00 p.m., and another from 11:00 p.m. to 7:00 a.m. (*Id.*, Art. 14(F); Pendergrass Decl., ¶ 5.)

The CBA also entitles employees to overtime premiums in excess of what may be required under law.  First, the CBA states that "[o]vertime shall be paid . . . for all hours worked by Employees . . . in excess of eight (8) hours per day and forty (40) hours per week."  (Dubin Decl., Ex. A, Art. 5(D).)  Second, as mentioned above, the CBA provides for automatic daily overtime payments for employees stationed in dormitories, the amount of which varies per dormitory, and which is received regardless of whether the officer actually works such overtime.  (*Id.*, Art. 14(H).)

8

**IV.    CBA's Mandatory Grievance and Arbitration
<u>Process Historically Has Applied to Wage Disputes</u>**

In the event of a dispute between the Union or its members and NYU, the CBA requires the parties follow a mandatory grievance and arbitration procedure.  (Dubin Decl., Ex. A, Art. 6.) Article 6 of the CBA, entitled "Grievance Procedure," mandates that all matters arising from the "meaning, application or operation of any provision" of the CBA must be submitted to a three-step Grievance Procedure, culminating in arbitration if "either party is not satisfied" with the results of the first two steps.  (*Id.*)

The parties' past practice and course of dealing reflects that the Grievance Procedure has been utilized broadly to resolve disputes between Union members and NYU regarding the terms and conditions of employment, including wage and hour grievances.  (Dubin Decl., Exs. B-D.) For instance, the parties have resolved disputes through the Grievance Procedure concerning allegations that NYU failed to pay Union members for certain time worked (*see id.*, Ex. B), did not pay them their regular hourly rate (*see id.*, Ex. C), and did not compensate them for meal breaks at required rates (*see id.*, Ex. D).

Plaintiff, in filing the Complaint, failed to comply with his obligation to submit his wage dispute claim through the Grievance Procedure.  As a result, NYU filed a grievance against Plaintiff (and the Union), and has since served the Union, and Plaintiff, with a demand for arbitration.  (Dubin Decl., Exs. E-G.)

## <u>PROCEDURAL POSTURE</u>

Berger filed his Complaint in the New York State Supreme Court on December 11, 2018.  (ECF No. 1-1.)  Since Berger's claims arise from the CBA, Defendant removed this action by filing a Notice of Removal on January 9, 2019, premised on federal question jurisdiction arising from Section 301 of the LMRA, 28 U.S.C. § 185(a).  (ECF No. 1.)  As explained in the Notice of

Removal, federal courts retain exclusive jurisdiction over suits for "violation of contracts between an employer and a labor organization," and the claims here – involving questions about what is, and is not, considered working time as expressly set forth in the CBA – indisputably allege "violation[s]" of the CBA.  (*Id.*)  Presently, Plaintiff opposes removal and seeks to remand the action to state court.  (ECF No. 12.)

## ARGUMENT

I. **This Court Has Jurisdiction Under the LMRA;**
   **Plaintiff's Motion To Remand Properly Should Be Denied**

Plaintiff's Motion should be denied as this Court has jurisdiction pursuant to Section 301 of the LMRA.  His claims plainly arise from and require the application and interpretation of the CBA and its terms and conditions – indeed, even he alleges that he and the Putative Class were not paid "***in accordance with the agreed upon terms of their employment***," *i.e.*, the CBA. (Compl., ¶ 31 [emphasis added].)  Among other considerations:  (i) Plaintiff seeks recovery for donning and doffing time, but whether such is compensable arises from the CBA and related custom and practice, not under the NYLL; (ii) Plaintiff seeks recovery for time at the end of his shift, but the CBA provides that no services need be provided during such time, making any such compensation a matter of pure contract interpretation; and (iii) the CBA provides for a complex and detailed pay differential and overtime structure, interpretation of which is necessary to Plaintiff's claims.

A. **Section 301 Preemption, Generally**

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the

amount in controversy or without regard to the citizenship of the
parties.

29 U.S.C. § 185(a).  It is axiomatic that if a "plaintiff's state claims are preempted by section 301,
federal jurisdiction exists and the removal of his case was proper."  *Vera v. Saks & Co.*, 335 F.3d
109, 114 (2d Cir. 2003).  "[I]t is well established that '[t]he pre-emptive force of [Section] § 301
is so powerful as to displace entirely any state cause of action . . . . notwithstanding the fact that
state law would provide a cause of action in the absence of § 301.'"  *Heyer v. Morris Okun, Inc.*,
2003 WL 21991583, at *2 (S.D.N.Y. Aug. 20, 2003) (*quoting Caterpillar v. Williams*, 482 U.S.
386, 392 (1987)).

A claim involving a dispute arising under a collective bargaining agreement "is preempted
by section 301 and ***must*** instead be resolved by reference to federal law."  *Vera*, 335 F.3d at 114
(*quoting Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 210 (1985)) (emphasis added).   As
explained, "[t]he Supreme Court has interpreted section "301 as a congressional mandate to the
federal courts to fashion a body of federal common law to be used to address disputes arising out
of labor contracts."  *Id.* at 114 (*quoting Allis-Chalmers Corp.,* 471 U.S. at 209).   Accordingly,
"[q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences
were intended to flow from breaches of that agreement, ***must*** be resolved by reference to uniform
federal law . . . ."  *Id.* (*quoting Allis-Chalmers Corp.,* 471 U.S. at 211)  (emphasis added).

Given this, state law claims that require either the "analysis" or "interpretation" of a
collective bargaining agreement "must either be treated as a § 301 claim, or dismissed as pre-
empted by federal labor-contract law."  *Conn. v. YP Advert. & Publ'g LLC*, 2017 WL 810279, at
*5 (D. Conn. Mar. 1, 2017), *recon. den.*, 2017 WL 1246333 (D. Conn. Apr. 3, 2017) (*quoting
Vera*, 335 F.3d at 114, and *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001)); *see also Eka
v. Brookdale Hosp. Med. Ctr.*, 2016 WL 11263669, at *5-6 (E.D.N.Y. Sept. 2, 2016), *adopted*,

2016 WL 6143343 (E.D.N.Y. Sept. 30, 2016) ("Section 301 preempts state law claims that involve interpretation of an underlying CBA.").

### B. Plaintiff's Claims Arise from the CBA and Thus Federal Jurisdiction Is Proper

To determine if a state law claim is preempted by Section 301, courts generally utilize a two-part analysis. "First, a court must analyze the 'legal character' of the claim and whether it is truly independent of rights under the collective bargaining agreement." *Levy v. Verizon Info. Servs., Inc.*, 498 F. Supp. 2d 586, 596-97 (E.D.N.Y. 2007) (citations omitted). "Second, even if the right exists independently of the CBA, the court must still consider whether it is nevertheless substantially dependent on analysis of a collective-bargaining agreement." *Id.* (citations and internal quotations omitted). If a claim satisfies *either* prong, it is preempted. *See id.* (preempted where claim required CBA interpretation, but their "legal character" arose from state law).

Here, Plaintiff's claims arise from, and are dependent on, the CBA. *Levy*, 498 F. Supp. 2d at 596-97. Plaintiff himself makes this clear: he alleges that he and the Putative Class were not paid "their hourly wage for all hours worked *in accordance with the agreed upon terms of their employment*." (Compl., ¶ 31 [emphasis added].) The CBA is the only contract between the Union members and NYU providing for any "agreed upon terms of their employment," and thus any contention that they were not paid "in accordance with the agreed upon terms of their employment" necessarily asserts claims under the CBA. *See, e.g.*, *Salamea v. Macy's E., Inc.*, 426 F. Supp. 2d 149, 154 (S.D.N.Y. 2006) (finding interpretation of a collective bargaining agreement necessary where plaintiff's claim derived from its alleged breach).

Beyond this, as explained below, consideration of Plaintiff's claims requires significant interpretation and application of the CBA's provisions and the historic course of dealing and practice arising therefrom. Given this background, Section 301 clearly preempts Plaintiff's claims.

### i.   *Plaintiff's Donning and Doffing*
   <u>*Claims Are Preempted by the LMRA*</u>

Plaintiff contends he and other Union members were not paid for time spent donning and doffing their work uniforms. (Compl., ¶¶ 16-19.) These claims are preempted by the LMRA.

It is well-settled that time spent donning and doffing "clothes" is not inherently compensable, but rather involves an analysis to determine whether such time constitutes "working time."[7] *See, e.g., Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007). As a result, where a CBA denotes what constitutes "working time," courts must interpret its terms in order to ascertain if the parties agreed that donning and doffing time constituted compensable "work." *See, e.g., Curry v. Kraft Foods Global, Inc.,* 2012 WL 104627, at *6 (N.D. Ill. Jan.12, 2012) (holding that state law donning and doffing claims were subject to LMRA preemption).

Courts consistently have found that "the meaning of 'work' under the CBA implicates federal contract interpretation, and therefore section 301"; thus, donning and doffing claims premised on state law are preempted by the LMRA where addressed in a CBA. *Curry,* 2012 WL 104627, at *6. This extends to where donning and doffing is not expressly referenced in a CBA, but rather arises from the "long-standing . . . customs, practices and polic[ies] under" a CBA. *Patton v. Stolle Mach. Co., LLC*, 2015 WL 5013668, at *3-4 (D. Colo. Aug. 25, 2015) (LMRA preemption of donning and doffing claims arising from custom and practice).

Here, Plaintiff contends he was not paid for donning and doffing time at the start and end of his shift.[8] (Compl., ¶¶ 16-19.) Interpretation of the CBA is required to determine if such

---

[7] Courts analyzing donning and doffing claims under the federal Fair Labor Standards Act and the NYLL have interpreted them identically. *See, e.g., Albrecht v. Wackenhut Corp.*, 2009 WL 3078880, at *11 (W.D.N.Y. Sept. 24, 2009), *aff'd*, 379 F. App'x 65 (2d Cir. 2010) (dismissing NYLL and FLSA donning and doffing claims using same analysis).

[8] The uniforms at issue do not include any safety equipment or other specialized gear, but just a shirt, pants and shoes (and occasionally a jacket). (Pendergrass Decl., ¶ 10.) Thus, they are not of the sort that is necessarily compensable as a matter of law. *See, e.g., Gorman*, 488 F.3d at 594 (explaining that time spent donning and doffing specialized safety equipment, as apart from a standard uniform, may be compensable as a matter of law).

constitutes compensable "working time," as what is – and is not – compensable working time is set forth in the CBA. For instance, Article 5 of the CBA provides that working time begins at "roll call," during the fifteen-minute period immediately preceding their shift, which is consistent with longstanding custom and practice. (Dubin Decl., Ex. A, Art. 5(A).) However, the CBA does not specify that donning time is compensable "working time," and custom and practice support that it is not. (*Id.*; Pendergrass Decl., ¶ 11.) Given this, interpretation of the CBA and custom and practice will be necessary to determine if donning time is compensable – which, as the CBA and the course of dealings demonstrate, it is not.

Likewise, the CBA expressly provides that officers will have a paid fifteen minute period during which they are "not required" to perform any duties, but may return to their locker room, change and leave. (Dubin Decl., Ex. A, Art. 5(A).) In practice, many officers – like patrol officers – are able to doff well before the expiration of this fifteen minute period and thus are paid for non-doffing time, while others may not be able to do so by virtue of their assignment (Pendergrass Decl., ¶¶ 15-16); as a result, the Court will be forced to interpret the CBA to determine if doffing time is, or is not, compensable time.

This is compounded by the fact that (i) the CBA provides for automatic daily overtime for certain Union members, designed to compensate them for potentially extended end-of-shift transitions, and (ii) officers may submit overtime slips if required to stay at their post beyond their shifts, only further supporting that interpretation of the CBA is needed to ascertain if doffing time is intended to be compensable. (*See* Dubin Decl., Ex. A, Art. 5(I); Pendergrass Decl., ¶¶ 13-14.)

Courts that have considered state law wage claims based on donning and doffing time in circumstances similar to those here have found them to be preempted by the LMRA. For example, in *Curry v. Kraft Foods Glob., Inc.*, the court held state law claims were preempted where the

plaintiff alleged that he and other union members had not been paid for donning and doffing time. *See Curry*, 2010 WL 4338637. There, the CBA stated that union members would be paid for working time, but did not define such to include donning and doffing time. *Id.*, at *6. Given this, the court explained that "[r]esolving the dispute . . . would require the Court to interpret, not merely reference, the CBA," to determine if "work" under the CBA included donning and doffing. *Id.* *Curry* is directly on point: the CBA here defines what constitutes working time, and determining whether donning and doffing is compensable will require an analysis of those provisions and the related custom and practice of the parties.

Similarly, in *Townsend v. BC Nat. Chicken LLC*, the court found the LMRA to preempt state law donning and doffing claims. *Townsend v. BC Nat. Chicken LLC*, 2007 WL 442386 (E.D. Pa. Feb. 2, 2007). In *Townsend*, the CBA provided that employees would earn an automatic "twelve (12) minutes pay per week" for "wash up time," but the plaintiffs alleged that they spent more time each week "washing up" and thus sought additional compensation. *Id.* The court found the LMRA to preempt the plaintiff's claims, holding that "determining whether Plaintiffs' claim that time spent 'donning and doffing' represents hours worked is a matter of interpretation of the CBA, requiring the Court to find preemption . . . ." *Id.* at *5 (citations omitted). The court further expressly rejected the plaintiffs' position that the court could merely offset the twelve-minute period against purportedly unpaid working time, as this itself would require interpretation of the CBA, *id.*; similarly here, the CBA permits for an end-of-shift doffing period, and any such offset would require similar interpretation.

Likewise, in *Carter v. Tyson Foods, Inc.*, the plaintiffs alleged, *inter alia*, that they had not been paid for donning and doffing time under both state and federal law. *Carter v. Tyson Foods, Inc.*, 2009 WL 4790761 (N.D. Ind. Dec. 3, 2009). The court found LMRA preemption, explaining

that the CBA provided "a detailed and elaborate structure" for compensation, including "numerous provisions that define work time and delineate the means for calculating applicable wage and overtime rates . . . ." *Id.*, at *7-8. Given this, the court found the plaintiff's claims to be "inextricably linked" with the CBA's work time provisions, which would thus "require a robust and involved analysis of the CBA . . . ." *Id.* Again, this is directly on point here.[9]

In light of the foregoing, NYU submits that Plaintiff's donning and doffing claims require interpretation and application of the CBA and thus are preempted by Section 301.

### ii.    *Plaintiff's Claim for End-of-Shift Pay Arises Solely from the CBA*

Plaintiff claims that he and Putative Class members were not paid for time worked at the end of their shifts. This claim arises directly from the CBA – not state law – and requires interpretation of the CBA.

Claims for payments arising from the fifteen minute period at the end of an officer's shift arises solely from the CBA. (Dubin Decl., Ex. A, Art. 5(A).) Specifically, the CBA provides that during this time, officers *may* return to the locker room, change and "leave the premises," but are *not* "required to perform" any services. (*Id.*) As this entire period is paid regardless of whether or not a Union member works a part or all of such period, any wage claim premised on such time *only* can arise under the CBA, and not the NYLL, since NYU has no statutory obligation to pay Union members for time in which they do not perform services. *See, e.g., Ellis v. Harpercollins Pubs., Inc.*, 2000 WL 802900, at *2 (S.D.N.Y. June 21, 2000) ("Because the reported violation is based on a failure to pay union employees in accordance with the terms of a CBA . . . this violation

_____

[9] Other courts considering the issue consistently have reached a similar result. *See also Martinez v. Cargill Meat Sols. Corp.*, 2011 WL 13078421, at *14-15 (D. Neb. Apr. 12, 2011) (finding LMRA to preempt state law claims where, *inter alia*, determining if donning and doffing time constituted "work" necessarily involved interpretation of CBA); *Penn. Fed'n of the Bhd. of Maint. of Way Aployees v. Nat'l R.R. Passenger Corp.*, 989 F.2d 112 (3d Cir.1993) (claim by employees for overtime pay for time traveling to and from work sites aboard defendant's trains could only be determined by interpreting the CBA).

is preempted by Section 301 . . . . [N.Y. Labor Law] Section 191 cannot be used to enforce the CBA."); *Drake v. Hyundai Rotem USA, Corp.*, 2013 WL 4551228, at *3 (E.D. Pa. Aug. 28, 2013) (where, *inter alia*, CBA provided for a paid grace period, preemption was appropriate).

Beyond this, the Court will be forced to interpret the CBA's provisions regarding this end-of-shift period. *See, e.g., Eka*, 2016 WL 11263669, at *5-6 (explaining that "[w]hether the hourly compensation paid is in compliance with the CBA and the extent to which wages were based on a CBA-defined wage structure . . . would clearly require interpretation" calling for Section 301 preemption). The CBA provides that after an employee's shift ends, he will not be required to perform any work, but may "leave [NYU's] premises . . . ." (Dubin Decl., Ex. A, Art. 5(A).) The Court will be required to analyze what portion of this period constitutes "working time" – including, with respect to doffing, as agreed to by the parties (*see* § I.B.ii, *supra*) – and what periods the officers actually worked, which will require interpreting both the CBA and the custom and practice underlying its terms and conditions. *See, e.g., Eka*, 2016 WL 11263669, at *5-6 (preemption found where plaintiff's claim was premised on shift-differential pay that was derived from CBA and required interpretation of same); *Stolarik v. New York Times Co.*, 323 F. Supp. 3d 523, 543-44 (S.D.N.Y. 2018) (*quoting Allis-Chalmers*, 471 U.S. at 211) (claim that plaintiff was not paid at rate set forth in CBA – *i.e.*, in accordance with agreed upon terms of employment – was preempted because it was "clear that Plaintiff is seeking to enforce the CBA itself, and not seeking to enforce state rights independent of the CBA . . . .'").

### iii. *Prosecution of Plaintiff's Overtime Claims Involves Interpretation of the CBA*

Plaintiff alleges that he and other Union members were not paid their regular wages and certain overtime pay for time worked "in accordance with the agreed upon terms of their employment." (Compl., ¶¶ 31.) These claims are preempted by the LMRA because the CBA

provides for a complex payment structure, including various pay differentials, overtime credits and daily overtime, and analysis of Plaintiff's claims will require interpretation and application of these CBA provisions.

First, the CBA provides for a variety of pay differentials for Union members.  These differential include pay supplements for (i) driving a motor vehicle on shift, a three-wheeled scooter, or bicycle; (ii) holding a fire safety certificate and performing duties relating to same; and (iii) serving as a Field Training Officer.  (Dubin Decl., Ex. A, Art. 14(C), (G), (I)(1).)  Beyond this, the CBA provides for shift differentials, with certain additional payments for working between 5:00 p.m. and 11:00 p.m., which differential cuts across two different daily shifts (the Union's shifts include 3:00 p.m. to 11:00 p.m. and 11:00 p.m. to 7:00 a.m. shifts) – making any computation even further dependent on interpreting the CBA.  (Dubin Decl., Ex. A, Art. 14(F).)

In order to analyze if Plaintiff and the Putative Class were paid hourly and/or overtime rates for time worked "in accordance with the agreed upon terms of their employment" (Compl., ¶ 31), the Court must interpret the CBA to determine, *inter alia*, if any shift differentials were applicable to class members, what those differentials were, and how to apply those shift differentials in connection with any overtime calculation.  Each individual officer's factual circumstances will be complex and discrete, and many determinations will be further compounded by potentially applicable daily duty and shift pay differentials – yet another matter that will require in-depth analysis of the relevant CBA provisions and each officer's daily work schedule and duties performed each day – that may "stack" on top of each other, including a night-shift differential that cuts across parts of multiple employee shifts.  (Dubin Decl., Ex. A, Art. 14(C), (F), (G), (I)(1); Pendergrass Decl., ¶ 5.)  Contrary to Plaintiff's argument, his and the claims of the putative class

18

do not involve some simple mathematical calculation whereby a court only needs to reference the CBA to discern pay rates.  (Mot. at p.12.)

Courts routinely have held that where application of shift differentials is required, LMRA preemption applies.  *See, e.g., Hoops v. KeySpan Energy*, 794 F. Supp. 2d 371, 379 (E.D.N.Y. 2011) ("Because the instant case would require the Court to interpret the CBA to determine whether it embodied an agreement between the parties to pay the Plaintiff contractual shift differentials for certain shifts and work, the Plaintiff's claim is preempted by the LMRA.")(citation omitted); *Eka*, 2016 WL 11263669, at \*7 (where shift differentials were at issue, determining whether hourly rates were in accord with the CBA would "clearly require interpretation of, and not just 'mere referral' to, the CBA"); *Martinez v. Cargill Meat Sols. Corp.*, 2011 WL 13078421, at \*14-15 (D. Neb. Apr. 12, 2011) (state law claims preempted where plaintiff claimed entitlement to overtime, which would have required determination of, *inter alia*, wage rates and entitlement to and calculation of overtime pay).

Second, the CBA provides that "[o]vertime shall be paid for at the rate of time and one-half for all hours worked by Employees . . . in excess of eight (8) hours per day and forty (40) hours per week."  (Dubin Decl., Ex. A, Art. 5(D).)  In addition, as previously noted above, the CBA credits overtime to certain employees for each shift – regardless of whether they actually work such overtime.  (*Id.*, Art. 14(H).)  For Plaintiff to prosecute his claims, the Court will be forced to analyze whether Union members were paid for overtime in a given week and, if so, determine whether such overtime was for daily overtime and/or an overtime credit – and thus arising solely from the CBA – or for legally required overtime, which will require interpretation and application of the CBA's terms.  Courts in like situations have found the LMRA preemption to apply.  *See, e.g.*, *Anderson v. JCG Indus., Inc.*, 2009 WL 3713130, at \*4 (N.D. Ill. Nov. 4, 2009)

19

(finding LMRA preemption where CBA provided for overtime pay in excess of what is required by law, as "[i]nterpretation of the CBA is necessary to determine whether overtime pay was properly recorded and paid pursuant to the CBA's overtime provisions"); *Drake*, 2013 WL 4551228, at *3 (claims preempted where, *inter alia*, CBA designated certain time as overtime in excess of statutory requirements).

Third, the court would be required to determine whether any overtime pay purportedly owing under the NYLL must be offset against overtime paid in accordance with the CBA's daily overtime provisions. As noted above, the CBA provides for daily overtime (in excess of eight hours), presumptive daily overtime for workers assigned to dormitories, and overtime for any meal period (otherwise unpaid) in which a Union member must perform any work – even if the Union member only works a portion of that meal period. (Dubin Decl., Ex. A, Art. 5(B),(D), Art. 14(H).) Courts have held that where offsets for overtime payments may need to be considered, such requires application and interpretation of the CBA and preemption is appropriate. *See Townsend*, 2007 WL 442386 (where matter required determination of whether contractual meal break payments offset donning and doffing time, this required interpretation of CBA and LMRA preemption applied).

In sum, for the Court to analyze Plaintiff's claims, it will be required to, among other things, analyze and interpret the CBA, its provisions and its application to determine the appropriate wage rates at issue, the appropriate overtime rates at issue, whether overtime already was paid pursuant to the CBA, and whether offsets may be required. These circumstances mandate preemption.

### iv.     To the Extent the Court Finds Any Ambiguity, Preemption Is Appropriate

Should the Court find any ambiguity in the CBA as to its meaning or interpretation, Plaintiff's motion should be denied. This is because merely "choosing between plausible readings

of ambiguous and material terms clearly falls within the realm of interpretation," and, in such instances, Section 301 preemption is appropriate. *See Cooper Union Fed'n of Coll. Teachers, Local 2163, NYSUT, AFT, AFL-CIO v. Cooper Union for Advancement of Sci. & Art*, 2019 WL 121000, at *3 (S.D.N.Y. Jan. 7, 2019) (*citing Vera*, 335 F.3d at 115-16) (denying remand where language of the CBA was ambiguous). *See also Coakley v. Kingsbrook Jewish Med. Ctr.*, 2017 WL 398379, at *2 (E.D.N.Y. Jan. 30, 2017) ("A claim is preempted under § 301 if . . . the CBA provision relevant to the plaintiff's claim is ambiguous."). Thus if the Court holds that there is any question as to whether the CBA expressly provides that donning and doffing time is compensable, or what constitutes "working time," precedent and the LMRA dictate that Section 301 preempts any state law claims.

### v.   *Plaintiff's Authority Is Readily Distinguishable*

The case law relied upon by Plaintiff is inapposite and readily distinguishable. Plaintiff principally relies on *Kaye v. Orange Reg'l Med. Ctr.*, but this case is unavailing because, unlike here, the *Kaye* defendant did "not identif[y] specific provisions of the CBA that must be interpreted to resolve Plaintiff's claims." *Kaye*, 975 F. Supp. 2d 412, 425 (S.D.N.Y. 2013). In *Kaye*, the sole question concerned the appropriate rate of applicable pay; unlike here, *Kaye* did not involve disputes about, *inter alia*, the compensability of donning or doffing time, the applicability of shift and duty pay differentials or computation involving same, contractual overtime, or compensation for non-working time.

The balance of Plaintiff's cases also are inapposite. For instance, in *Jordan v. MV Transportation, Inc.*, the employee sought to recover overtime payments; like in *Kaye*, no analysis was required as to compensability of donning and doffing, consideration as to pay differentials or overtime benefits, or payment for non-working time. *Jordan*, 2016 WL 748115 (E.D.N.Y. Feb. 3, 2016). Similarly, *Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.* relied

on almost identical facts and is distinguishable for like substantially identical reasons. *Chu*, 194 F. Supp. 3d 221 (S.D.N.Y. 2016). Plaintiff's other cases are similarly off-point.

**C. Plaintiff Cannot Avoid Federal Jurisdiction Through Artful Pleading**

Plaintiff argues (falsely) that federal jurisdiction does not exist because his Complaint makes no reference to the CBA. Plaintiff is wrong.

First of all, even though Plaintiff does not expressly use the term "collective bargaining agreement," Plaintiff's Complaint necessarily cites to the CBA as he specifically alleges that he was not paid "***in accordance with the agreed upon terms of their employment.***" (Compl., ¶ 31 [emphasis added].) What other "agreed upon terms of [his] employment" could Plaintiff possibly be referring to if not the CBA? To be sure, there are none.

Regardless, it is well-settled that a plaintiff cannot avoid LMRA jurisdiction through artful pleading. Courts repeatedly have held that jurisdiction under the LMRA exists even where a Complaint "makes no mention of federal law, and asserts only a violation of a [state] wage statute . . . ." *YP Advert. & Publ'g,* 2017 WL 810279, at *5 (*quoting Sullivan v. Am. Airlines*, 424 F.3d 267, 271 (2d Cir. 2005)); *see also Vera*, 335 F.3d at 114 (*quoting Livadas v. Bradshaw,* 512 U.S. 107, 122 n.16 (1994)) ("The 'unusual pre-emptive power' accorded section 301" is such that it "extends to create federal jurisdiction even when the plaintiff's complaint makes no reference to federal law and appears to plead an adequate state claim."); *Heyer*, 2003 WL 21991583, at *2 (*quoting Caterpillar*, 482 U.S. at 393) (explaining that Section 301's complete preemption displaces the ordinary "well-pleaded complaint rule"). Thus, "a plaintiff may not defeat federal subject-matter jurisdiction by artfully pleading his complaint as if it arises under state law" by

simply avoiding reference to a governing collective bargaining agreement. *YP Advert. & Publ'g*, 2017 WL 810279, at *5 (*quoting Sullivan*, 424 F.3d at 272).[10]

### D.  Interpretation of the CBA's Provisions Requires Consideration of the Union and NYU's Course of Dealing

The course of conduct between the Union and NYU supports that the parties intended for such matters to be governed by the CBA and subject to its Grievance Procedure.  To date, the Union and NYU have operated under this and similar CBAs for decades.  (*See* Dubin Decl., Ex A, Art. 14(H) [noting overtime credits in effect since prior to 1997].)  Throughout their course of these dealings, the Union and NYU have resolved various wage and hour disputes through the CBA's grievance procedure, reflecting the parties intent and understanding as to the CBA and its terms and conditions.  (*Id.*)

By way of example, past disputes addressed through the CBA's Grievance Procedure have included, without limitation:

- Disputes regarding a purported failure by NYU to pay Union members for certain time worked (*see* Dubin Decl., Ex. B);

- Claims alleging a failure to compensate employees at their correct hourly rate (*id.*, Ex. C); and

- Grievances based on a purported failure to pay for meal breaks at required rates (*id.*, Ex. D).

These are but a few examples of wage-related claims resolved by the Union and NYU pursuant to the Grievance Procedure.  Plaintiff's wage claim here is no different and properly is required to be resolved through the CBA's dispute resolution process.

---

[10] *See also Salamea*, 426 F. Supp. 2d at 153 (relying on CBA to find Section 301 preemption despite plaintiff not citing CBA in pleading, and expressly disavowing that claims were based on CBA); *Puccino v. SNET Info. Servs., Inc.*, 2011 WL 4575937, at *6 (D. Conn. Sept. 30, 2011) (Section 301 preemption found despite absence of reference to CBA in complaint) *see also Eka*, 2016 WL 11263669, at *4 (*quoting Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 44 (2d Cir. 1991)) ("Plaintiffs' failure to include matters of which as [a pleader he] had notice and which were integral to [his] claim – and that [he] apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion.").

In short, NYU and the Union historically have resolved wage and hour disputes such as the present claims through the grievance and arbitration procedure, and there is no valid reason to deviate from this process here.  To this end, Defendant intends to compel Plaintiff to utilize the grievance and arbitration procedure, and recently served a Demand for Arbitration on Plaintiff. (Dubin Decl., Exs. E-G.)

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court deny Plaintiff's Motion in its entirety, and grant Defendant such other relief as the Court deems appropriate.

Respectfully submitted,

Dated:     March 7, 2019         **DLA PIPER LLP (US)**
           New York, New York

           By:  /s/ Joseph A. Piesco, Jr.
                    Joseph A. Piesco, Jr.

           Joseph A. Piesco, Jr.
           Garrett D. Kennedy
           DLA PIPER LLP (US)
           1251 Avenue of the Americas 27th Floor
           New York, New York 10020-1104
           Telephone:  (212) 335-4500
           Facsimile:   (212) 335-4501

           *Attorneys for Defendant*
           *New York University*