UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICHARD BERGER, *for himself and on behalf of all others similarly situated*,
                      Plaintiff,

-v-

NEW YORK UNIVERSITY,
                      Defendant.

19-CV-267 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Richard Berger filed this putative class action in New York Supreme Court, New York County, on December 11, 2018, seeking to hold his employer, Defendant New York University ("NYU"), liable for alleged violations of the New York Labor Law ("NYLL") and the New York Codes, Rules, and Regulations ("NYCRR"). (Dkt. No. 12-1 ("Compl.").) On January 9, 2019, NYU removed the case to federal court pursuant to the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.* (Dkt. No. 1.) Berger now moves to remand the case back to state court. (Dkt. No. 11.) For the reasons that follow, the motion is granted.

**I.    Background**

Berger, an NYU security guard, filed this suit in New York state court on December 11, 2018, alleging that NYU has been "engaged in a policy and practice of requiring" its guards "to regularly work over forty (40) hours in a week without paying them all earned overtime wages." (Compl. ¶ 2; *see also id.* ¶ 4.) In particular, Berger alleges that NYU has failed to pay its guards for a portion of the time they spend before and after each shift changing into and out of their uniforms and traveling to and from their assigned posts. (Compl. ¶¶ 16–18.) By failing to pay its employees for this supposedly "compensable work time" (Compl. ¶ 19), including by failing to pay overtime where due, NYU has, according to the complaint, violated both the NYLL, N.Y.

1

Lab. Law § 663(1), and the NYCRR, N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (Compl. ¶¶ 20–33). Berger seeks redress for these alleged violations on his own behalf and on behalf of a plaintiff class consisting of all those "who performed work as security guards and in other related trades for [NYU] at any time between December 2012 and the present." (Compl. ¶ 7.)

NYU removed the case to federal court on January 9, 2019. (Dkt. No. 1.) As grounds for removal, NYU invoked Section 301 of the LMRA (Dkt. No. 1 ¶¶ 6–18), which, as relevant, confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization," 29 U.S.C. § 185(a). Although Berger does not in so many words allege the violation of such a contract, NYU explained that the terms of Berger's employment are governed by a collective-bargaining agreement ("CBA") negotiated between NYU and Berger's union, the Local One Security Officers Union, and that Berger's claims "clearly implicate, and require the interpretation of," the CBA's wage and hour provisions. (Dkt. No. 1 ¶ 9; *see also id.* ¶ 4.) In addition, NYU contended, federal jurisdiction under the LMRA is proper because NYU intends to file a motion to dismiss or compel arbitration on the grounds that Berger's claims are subject to a mandatory grievance and arbitration procedure set out in the CBA. (Dkt. No. 1 ¶¶ 14–17.)

On February 7, 2019, Berger moved to remand the case back to state court. (Dkt. No. 11.) That motion has been fully briefed (Dkt. Nos. 13, 18, 25), and the Court is prepared to rule.

**II.      Legal Standard**

A district court must remand a case that has been removed from state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." *Prop. Clerk v. Fyfe*, 197 F. Supp. 2d 39, 40–41 (S.D.N.Y. 2002) (quoting 28 U.S.C. § 1447(c)). It is the removing party that bears the burden of demonstrating that the case has been properly removed or, in other words, that the case "could have been originally filed in federal court." *Collaku v. Temco Serv. Indus., Inc.*, No. 18 Civ. 4054, 2019 WL 452052, at *2 (S.D.N.Y. Feb. 5,

2019) (quoting *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir. 1997)). Given "the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (quoting *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045–46 (2d Cir. 1991)).

**III.    Discussion**

In removing this case, NYU relies on this Court's "jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Ordinarily, this ground for federal jurisdiction is unavailable where, as here, "a complaint alleges only state law based causes of action," even if the removing party might anticipate raising a federal defense. *Hernandez*, 116 F.3d at 38. But an anticipated defense of complete LMRA preemption creates an exception to this rule. Under Section 301 of the LMRA, "state law based claims for '[s]uits for violation of contracts between an employer and a labor organization' are completely preempted, and if such a suit is filed in state court, it can be removed to federal court." *Id.* (alteration in original) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)).

The Court therefore must determine whether NYU has shown that the LMRA preempts Berger's state-law claims. If so, NYU has properly removed the case to federal court. If not, the case must be remanded, given that NYU has invoked no other basis for federal jurisdiction.

As noted, Section 301 of the LMRA confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). But "the Supreme Court has extended the preemptive effect of section 301 beyond suits alleging contract violations." *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (per curiam). Under the relevant precedent, all "[q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow

3

from breaches of that agreement, must be resolved by reference to uniform federal law" pursuant to the LMRA, even if those questions arise in connection with non-contract causes of action. *Id.* (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)). The touchstone question for preemption, then, is whether "resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Id.* (quoting *Allis-Chalmers*, 471 U.S. at 220). If so, then the claim is preempted pursuant to Section 301. But if "the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation" provides no basis for LMRA preemption. *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994).

Berger's complaint here asserts no purported rights under the CBA. Rather, it contends only (1) that there are parts of the workday—specifically, some time spent donning and doffing uniforms and some time spent traveling to and from an assigned security post—for which NYU's guards are not paid and (2) that state labor law entitles the guards to payment, including overtime pay where applicable, for this uncompensated time. (*See* Compl. ¶¶ 18–19, 26.)

Neither aspect of this claim requires interpretation of the CBA. As to the first aspect, the present record offers no reason to believe that determining whether NYU has paid its guards for any given part of the workday is anything other than a question of empirical fact. This is not a case, for example, in which there is any dispute over which periods of time were intended to be covered by any pay the guards *have* received. NYU states that its guards are paid under the CBA for a period that starts at a daily "roll call" and ends fifteen minutes after the end of their scheduled shift (Dkt. No. 18 at 13–14), and Berger appears to accept this understanding (Dkt. No. 25 at 3–4, 10). The disputed issues, rather, are whether NYU has *in fact* paid its guards for this time and whether the guards have worked additional, uncompensated hours beyond this

4

time. Resolving these issues will require inquiry into the facts on the ground, not the terms of the CBA.[1]

As for the second aspect of Berger's claim, determining whether New York statutory law creates a right to compensation for the time a worker spends on any given task, irrespective of the terms of her employment contract, is a state-law matter that does not require interpretation of the CBA. *See, e.g.*, *Vera*, 335 F.3d at 115 ("[I]f a state prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rules or rights would not be preempted by section 301."); *Chu v. Chinese-Am. Planning Council Home Attendant Program, Inc.*, 194 F. Supp. 3d 221, 228–29 (S.D.N.Y. 2016) ("Courts have routinely held that [certain] unpaid wage . . . claims under the NYLL . . . are 'legally independent' of wage-related provisions in a CBA . . . ." (quoting *Severin v. Project OHR, Inc.*, No. 10 Civ. 9696, 2011 WL 3902994, at *4 (S.D.N.Y. Sept. 2, 2011))).

Of course, the scope of a statutory entitlement does sometimes depend on the terms of an underlying employment contract. For example, NYU cites authority addressing statutes under which an employee's entitlement to receive compensation for donning and doffing time depends

---

[1] In a slight complication, NYU claims that it has a "practice and custom" of allowing guards who end up working past the end of the fifteen-minute paid post-shift window to submit an "overtime slip" and receive premium pay for this excess time. (Dkt. No. 20 ¶ 14; *see also* Dkt. No. 18 at 14.) Even assuming that this supposed practice forms an unwritten component of the CBA, though, it does not change the analysis. The success or failure of Berger's state-law claims will hinge in relevant part on whether these overtime payments were actually made and not on whether it was the CBA that required NYU to make them. *See Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 233 (2d Cir. 1997) ("Whether a state cause of action may proceed in state court depends on 'the legal character of a claim, as independent of rights under the collective bargaining agreement, (and not whether a grievance arising from precisely the same set of facts could be pursued [under the CBA])."'" (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994))); *McLean v. Garage Mgmt. Corp.*, No. 10 Civ. 3950, 2011 WL 1143003, at *3 (S.D.N.Y. Mar. 29, 2011) ("It is unnecessary . . . to consider the *method* of payment to determine whether plaintiffs were paid for 'each hour worked' as required by state law.").

on whether the underlying employment contract conceives of that time as "working time." (Dkt. No. 18 at 13–16.) Importantly, though, none of the authority cited by NYU addresses New York law. *See, e.g.*, *Patton v. Stolle Machinery Co.*, No. 14 Civ. 3392, 2015 WL 5013668, at *2–4 (D. Colo. Aug. 25, 2015) (addressing federal labor law); *Curry v. Kraft Foods Glob., Inc.*, No. 10 Civ. 1288, 2012 WL 104627, at *5–6 (N.D. Ill. Jan. 12, 2012) (addressing Illinois law); *Martinez v. Cargill Meat Solutions Corp.*, No. 09 Civ. 247, 2011 WL 13078421, at *14–15 (D. Neb. Apr. 12, 2011) (addressing Nebraska law); *Carter v. Tyson Foods, Inc.*, No. 08 Civ. 209, 2009 WL 4790761, at *6–7 (N.D. Ind. Dec. 3, 2009) (addressing Indiana law); *Townsend v. BC Natural Chicken LLC*, No. 06 Civ. 4317, 2007 WL 442386, at *5 (E.D. Pa. Feb. 2, 2007) (addressing Pennsylvania law). *But cf. Curry*, 2012 WL 104627, at *3 (noting that under Wisconsin law "donning and doffing count towards hours worked" independent of any contractual agreement).

Thus, despite bearing the burden of establishing a basis for federal jurisdiction, *see Collaku*, 2019 WL 452052, at *2, NYU has failed to show that New York looks to the terms of the relevant employment contract to decide what portions of the workday are compensable under state labor law.[2] And Berger's claim that New York labor law does indeed create a freestanding right to compensation for the sort of "before-shift and after-shift work" at issue here, irrespective of the terms of the underlying employment contract (Dkt. No. 25 at 6), is not without support, *see, e.g.*, *Polanco v. Brookdale Hosp. Med. Ctr.*, 819 F. Supp. 2d 129, 134 (E.D.N.Y. 2011)

---

[2] NYU's lone attempt to address New York law is a footnoted citation to *Albrecht v. Wackenhut Corp.*, No. 07 Civ. 6162, 2009 WL 3078880 (W.D.N.Y. Sept. 24, 2009), which dismissed claims under federal labor law and the NYLL on the ground that certain pre- and post-shift activities were not compensable, *see id.* at *9–10. (Dkt. No. 18 at 13 n.7.) But *Albrecht*'s analysis rested entirely on federal law and contained no independent discussion of state law. It therefore sheds little light on how New York law defines the scope of compensable working time. *Cf. Morris v. Alle Processing Corp.*, No. 08 Civ. 4874, 2013 WL 1880919, at *10 (E.D.N.Y. 2013) (explaining that "[w]hether time spent donning and doffing uniforms is compensable under [federal labor law] is irrelevant" in the context of an NYLL claim).

(holding that claims that employees "worked . . . after regular hours[] and . . . were not paid for this work" alleged "a violation of an independent statutory right arising under the NYLL"). To be sure, it may turn out that Berger is wrong and that New York law will indeed require the examination of the CBA's terms to determine whether he is entitled to be paid for otherwise uncompensated donning, doffing, and travel time. But, absent authority that clearly resolves the issue, the state-law question of whether New York law defines compensable time in a way that requires interpreting an underlying labor contract—and that thus triggers LMRA preemption—is best addressed by the New York courts. *See Lupo*, 28 F.3d at 274 (requiring federal courts to "resolv[e] any doubts against removability" (quoting *Somlyo*, 932 F.2d at 1046)).

The Court therefore concludes that NYU has failed to demonstrate that establishing its liability on the state-law claims Berger has asserted in this case will require interpretation of the CBA. Having so concluded, the Court considers NYU's three remaining arguments for removal.

First, NYU suggests that even if Berger's claims are not preempted, federal jurisdiction is appropriate because it intends to file a motion to dismiss (or compel arbitration of) Berger's claims due to Berger's failure to comply with a mandatory grievance and arbitration procedure set out in the CBA. (Dkt. No. 1 ¶¶ 14–17.) However, "an anticipated or actual federal defense generally does not qualify a case for removal," *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999), and this rule applies to "a defendant's assertion that a collective bargaining agreement compels arbitration" of a non-preempted state-law claim, *Chu*, 194 F. Supp. 3d at 229; *see also Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) ("If [a plaintiff's] claim is plainly based on state law, [Section] 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense."). Removal on this basis is thus unwarranted.

Second, NYU maintains that Berger's right to at least a portion of the compensation he seeks arises exclusively from the CBA and not from New York's statutory law. Specifically, NYU points out that guards are not required to perform any job functions during the fifteen-minute post-shift period for which the CBA guarantees payment and that state law provides no independent right to be paid for time that is not spent on actual work tasks. (Dkt. No. 18 at 16–17.) Thus, NYU contends, any claim to compensation for any idle portions of this post-shift window must derive from the CBA. (*Id.*) Berger, though, does not appear to seek compensation for any such periods. Rather, he seeks compensation for "time spent changing in the locker room, time spent assembling before each shift, time spent waiting for relief workers to appear at the end of each shift, and time spent travelling between the designated locker room building and the assigned security post." (Compl. ¶ 32.) And, as explained above, NYU has not adequately rebutted Berger's claim that state law creates an independent right to be paid for time thus spent.

Finally, NYU argues that the complaint's allegation that NYU has failed to pay its guards "for all hours worked in accordance with the agreed upon terms of their employment" (Compl. ¶ 31) makes clear that Berger has invoked the CBA (Dkt. No. 1 ¶ 11). Berger, though, represents that, in referring to the "agreed upon terms of [his] employment"—*i.e.*, the CBA—he was not identifying a basis for liability but rather was identifying the benchmark by which damages will be calculated in the event that liability is found under state statutory law. (Dkt. No. 13 at 12; Dkt. No. 25 at 2 n.1.) The Supreme Court has indicated that a state-law claim is not preempted merely because the calculation of damages will require the interpretation of a CBA, *see Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 n.12 (1988), and indeed, NYU itself agrees that "where the only reason for the court to consult a bargaining agreement [is] to determine the appropriate pay rate," LMRA preemption "[does] not apply" (Dkt. No. 18 at 4).

8

In seeming tension with its concession, however, NYU argues that Berger's claims are preempted because "the CBA provides for a complex payment structure, including various pay differentials, overtime credits and daily overtime," such that "analysis of [Berger's] claims will require interpretation and application of these CBA provisions." (Dkt. No. 18 at 17–18.) NYU, though, is incorrect that Berger's claims require an analysis of the CBA's pay structure. Unlike the cases upon which NYU relies, this case raises no contention that an employer failed to properly apply the pay rate framework set out in a CBA. *See, e.g.*, *Hoops v. KeySpan Energy*, 794 F. Supp. 2d 371, 377 (E.D.N.Y. 2011) (addressing a claim that an employer miscalculated an employee's overtime compensation by failing to apply certain contractual wage provisions); *Anderson v. JCG Indus., Inc.*, No. 09 Civ. 1733, 2009 WL 3713130, at *4 (N.D. Ill. Nov. 4, 2009) (addressing a claim that an employer failed to pay certain overtime wages guaranteed by the CBA but "not granted by state or federal law"). Instead, it involves a claim that Berger "was required to work without any pay at all" for portions of his workday. *Isaacs v. Cent. Parking Sys. of N.Y., Inc.*, No. 10 Civ. 5636, 2012 WL 957494, at *4 (E.D.N.Y. Feb. 27, 2012). Under such circumstances, preemption is not triggered by the mere fact that a court will need to consult the CBA to determine the appropriate rate of pay for any periods as to which liability is found. *See id.* at *5 (distinguishing a preempted claim that a worker is "entitled to a particular type of remuneration" under a CBA from a non-preempted claim that certain premiums a worker was paid under the CBA should factor in to the calculation of the rate of pay the worker is entitled to receive under state statutory law for unpaid time).[3]

---

[3] NYU also contends that a court may need to consult the CBA's wage provisions to determine whether Berger received any excess sums for his paid working time that might be used to offset any amount he is owed under the NYLL and NYCRR for his unpaid working time. (Dkt. No. 18 at 20.) But NYU has pointed to no authority holding that an employer may permissibly withhold pay for certain portions of the workday under New York law merely

In the end, NYU has failed to establish that the LMRA preempts Berger's claims. Even though it may eventually turn out that evaluating Berger's claims under New York law will require interpretation of the CBA, such that it ultimately becomes clear that his claims are indeed preempted, NYU has not proven the point at this stage of the litigation. Because this Court must "resolv[e] any doubts against removability," *Lupo*, 28 F.3d at 274 (quoting *Somlyo*, 932 F.2d at 1046), the Court concludes that this case must be remanded to state court.

## IV. Conclusion

For the foregoing reasons, Berger's motion to remand is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 11, close the case on this Court's docket, and remand the case to the New York Supreme Court, New York County.

SO ORDERED.

Dated: August 2, 2019
      New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

because it has agreed to pay premium rates for other portions of the workday. If anything, the case law the parties have cited suggests the opposite. *See Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 202 (2d Cir. 2013) (noting that "an allegation of hours worked without compensation" may be sufficient to state an NYLL violation).